[*Peifer v. Landis.*]

*Bower*, who was seised in fee, and possessed of said tract of land at the time of his death. That the said ` George Bower died possessed of a very large real and personal estate, and left at the time of his death but one child ; and that the said *George* often told the said *Sarah* and his neighbours, that he would do as much for her as for his own child.

This evidence was objected to by the defendants and rejected by the court ; when the plaintiffs took a nonsuit, which they afterwards moved to take off, and which was refused, and they appealed.

*Alricks* and *Weidman,* for appellants.

# Fricker's Appeal.

Land purchased by a sheriff, after he enters into his official recognizance, is not bound by that recognizance, but if judgment is obtained upon it, after he acquires such land, the land is bound by the judgment.

The lien of a judgment opened to let the defendant into a defence, " the judgment to remain as security," was not lost by the lapse of five years from its entry, before the act of the 26th of March 1827, although the entry of the rule and order of the court opening the judgment, be made on the execution docket, to the entry of the execution which had issued on such judgment.

The act of the 26th of March 1827 requires a *scire facias* to be issued to preserve the lien in such case, and the lien, since that act, would not be preserved by a rule tying up the proceedings.

Where a judgment opened to let a defendant into a defence is not brought to trial within a reasonable time, and the defendant's real estate has been sold by the sheriff, and the money is in court for distribution, the court ought to permit the judgment creditor, who would be next entitled to the money, to appear as defendant, and rule the plaintiff to a trial.

APPEAL from the decree of the court of common pleas of *Berks* county, in the distribution of the moneys raised by the sale of the real estate of *John Miller,* a former sheriff of that county. *John Miller* having been duly elected sheriff, on the 20th of October 1817 entered into bond and executed a recognizance according to law. To January term 1830, a writ of *venditioni exponas* issued against him, on which his real estate was sold, and the money arising therefrom paid into court by the then sheriff: to wit, 1132 dollars, arising from real estate of which the said *John Miller* was seised and possessed before, and at the execution of said recognizance; and 475 dol-

2 z

lars and 3 cents, arising from real estate which the said *John Miller* acquired after the execution and date of said recognizance.

On *Miller's* official recognizance, a *scire facias,* for the use of *Gabriel Heister,* issued to November term 1823, on which, on the 14th of November 1827, a judgment for 1053 dollars and 17 cents was entered, upon an award of arbitrators. This judgment was entered after he became the owner of the real estate acquired by him subsequently to the execution of the recognizance. The *Bank of Pennsylvania* obtained a judgment against *Miller* on the 11th of November 1822, on which a *fieri facias* was issued to January term 1823 ; nothing was done by the sheriff on this writ ; and on the 16th of January 1823, a rule was obtained to show cause why the defendant should not be let into a defence under this judgment, " proceedings stayed in the mean time." This rule, on the 26th of March 1823, was made absolute, "judgment and execution to remain as securities." The entry of these rules was made in the execution docket, and the trial of the issue directed had not been had ; but to April term 1830, a *scire facias* to continue the lien of this judgment was issued, and returned *scire feci.*

*William Fricker* had judgments entered after the bank's judgment, which had been regularly revived.

The court of common pleas decreed: that the sum of 1132 dollars, money arising from the real estate owned by *John Miller* before the date of said recognizance, be applied in payment of *Gabriel Heister's* judgment ; and that the sum of 475 dollars and 3 cents, arising from the real estate acquired by said *John Miller* after the date of said recognizance, be applied to the *Bank of Pennsylvania's* judgment.

The cause was argued by *Baird* and *Smith,* for the appellant, who referred to *Black* v. *Dobson,* 11 *Serg. & Rawle* 94 ; *Pennock* v. *Hart,* 8 *Serg. & Rawle* 369 ; *Bombay* v. *Boyer,* 14 *Serg. & Rawle* 253 ; 1 *Penns. Rep.* 129, 134, 481.

*Biddle,* for the appellee.

The opinion of the Court was delivered by

HUSTON, J.—When *John Miller* was elected sheriff of Berks county he was the owner of certain lands, all of which were bound by the recognizance then entered into by him by the provisions of the act of the 28th of March 1803. It has been decided that a judgment does not in this state bind after-purchased lands, unless levied on while in debtor's hands ; but that if he sells them to an innocent purchaser before levy, such purchaser holds them clear of the lien. Whether the principle of that decision would embrace this case is not material, because *Heister* sued a *scire facias* on that recognizance and presented it to judgment, which judgment bound all lands which were the property of *Miller* at the date of that judg-

ment, although not bound by the recognizance as having been purchased after its date. *Heister* is then entitled to the whole of his judgment up to the time of the return of the sheriff's sale, that is to 1191 dollars and 8 cents; for all the lands sold were *Miller's* before the judgment on the *scire facias.*

The Bank of Pennsylvania had the next judgment, viz. of the 11th of November 1822, and *fieri facias* issued to 7th January 1823. On the return day of this *fieri facias,* a motion was made to open their judgment and let the defendant into a defence; a rule to show cause was entered, and made absolute on the 26th of March 1823; the judgment and execution to remain as securities. It would seem nothing has been done in this trial thus ordered; but under the act of 1827, and its supplement of the 26th of March 1829, a *scire facias* was duly issued to show cause why the lien should not be continued five years. The question is, whether the lien was not lost before that *scire facias* issued in 1830? because more than five years had elapsed from the date of the judgment, on the 11th of November 1822; and because the *fieri facias* on the rule to open the judgment had been returned not executed. By the law, a rule to stay proceedings for one purpose, stays the proceedings for all purposes; and this would, independently of any settled rule, be the case where they are stayed for the purpose of ascertaining the amount really due. The act of the 26th of March 1827, has, however, established one exception to this: in section third, it is enacted, that "no order or rule of court, or any other process or proceeding thereon, shall have the effect of obviating the necessity of a revival in the manner herein prescribed." This seems to recognize, that theretofore an order or rule of court might have had that effect. That law was made to confine the continuance of liens thereafter to the strict letter of the act of assembly. The second section also recognizes that judgment had before that time been kept in force by a liberal construction in favour of their liens. We are of opinion, then, that, although since the act of 1827 the lien would not be preserved by a rule tying up the proceedings in a judgment issued, yet before that it would have been, and that the judgment of the common pleas was right.

It has been objected that this motion and rule to stay proceedings, were entered under entry of this execution in the execution docket, and not as the entry of the original action in the appearance docket. Where no execution has issued, such motion and rule would be entered to the suit in the continuance docket. Where an execution has issued, and one object of the motion is to stay the proceedings on the execution, the motion and rule are often entered in the execution docket; perhaps, in some counties, it is generally so entered. It is true, when the issue is formed, and a trial had, the whole would be transferred to the appearance and continuance docket. It was said, the execution docket was no part of the record; but this, I think, was said without reflection: the discharge of the debt by levy and sale

appears on that docket ; and if the money is paid after execution, and without a sale, that appears generally, if not always, on the execu- tion docket.   On that docket, the plaintiff, or his attorney writes the satisfaction : and we find it said, that the writ, new pleas and execu- tions are the record ; and we find it said, that the docket is the record ; both assertions are partially true—they are both together the whole record.   The pleas are not found except on the docket, in most cases ; the judgment is found only on the docket ; and I have said, satis- faction is generally only found there.   The rules to take deposi- tions, and every other rule in the progress of the cause, are found on some of the dockets.   It is true, the execution itself, where the party claims or defends under some act of the officer under it, must be pro- duced if possible ; if lost, we produce the docket instead of it.

This is not like the case of *Black* v. *Dobson,* or any case of a judgment bond entered up by the plaintiff, who is bound, by positive enactment, to make his entries effecting that judgment, in a pro- per place.   It is the act of the court, in tying up this judgment, and we should make sad work if all the entries in the execution docket were declared apocryphal.   All proceedings after judgment are to be found, in ninety-nine cases out of a hundred, in that docket.

It would seem the issue directed between the *Bank* and *Miller*, is not yet tried.   The money can not be kept locked up for ever. If the parties do not proceed to trial, the court ought to permit *Fricker*, who is next entitled to the money, to appear as defendant, and rule plaintiff to a trial.

Judgment for *Heister*, for 1191 dollars and 8 cents ; and affirmed for the rest.