# In the Matter of Fulton's Estate.   Hood & Co.'s Appeal.

1. Where no judgment is obtained in a *scire facias* on a judgment until more than five years after the issuing of the *scire facias*, the lien of the original judgment is lost.

2. A judgment-debtor having assigned his land for the benefit of creditors, such an estate in the land did not pass to the assignee as would continue the lien of the judgment for five years after the assignee's death, without regular revival.

3. Such assignee had no estate or interest to be bound; the judgment was not against him, and was not his debt. He was merely the agent of the assignor to distribute his estate amongst his creditors.

4. A judgment entered for a specific sum was opened, and defendant let into a defence, the lien to remain; a verdict was found for the plaintiff generally, and not for a specified sum. *Held*, that the lien was continued for the amount due on the judgment.

5. The pleas in such case being *non est factum* and payment with leave, &c., the verdict for the plaintiff negatived them, and left the debt to stand as before the opening of the judgment.

6. The lien of a judgment begins without liquidation whenever the claim in the action is for a sum certain or can be ascertained by calculation from the demand set forth in the declaration.

7. An assignee for creditors is bound by a judgment rendered against the assignor before the assignment, and is not entitled to notice of its revival as a purchaser for value; notice to the assignor remaining in possession of the land, is sufficient.

8. Omission to liquidate a judgment recovered on *scire facias*, and place the *sum* on the judgment-docket, will not postpone it to prior judgments which had lost their liens. The object of the Act of March 29th 1827 is to give notice to subsequent lien-creditors and purchasers.

THIS was an appeal from the decree of the Court of Common Pleas of *Westmoreland county*, distributing the money arising from the sheriff's sale of the land of Robert Fulton.

At the time of the sale there were a large number of judgments against Fulton, but in this court the contest was limited to the three following: Hood & Co. *v.* Fulton; William Larimer to the use of John Tintsman *v.* Fulton; Benjamin Kifer to the use of

[In re Fulton's Estate.]

Martin O. Tintsman *v.* Fulton, and to the claim of James A. Logan, assignee for the benefit of creditors of Fulton.

1. Benjamin Kifer for use, &c., brought suit against Robert Fulton and Alexander Fulton, and July 18th 1854, defendants confessed judgment for $393.86.

February 4th 1856, Robert Fulton, one of the defendants, assigned all his property to Adam Tintsman for the benefit of his creditors.

August 20th 1858, there being then due on this judgment, $212.37, with interest from April 30th 1855, it was transferred to Martin O. Tintsman.

A *scire facias* was issued January 21st 1859, " Benjamin Kifer * * for use of Martin O. Tintsman *v.* Robert Fulton, with notice to Adam Tintsman, terre-tenant."

Adam Tintsman having died June 7th 1863, James A. Logan was appointed assignee in his stead, February 27th 1864, and same day was substituted as terre-tenant in the *scire facias.*

March 1st 1864, judgment was rendered against defendants and terre-tenant, and liquidated at $334.94.

2. On the 14th of August 1854, Hood & Co. obtained judgment by confession against Fulton for $20,000. At February Term 1857, this judgment on the application of the defendant was opened and he let into a defence, the judgment to remain a lien. The defendant pleaded *non est factum*, and payment with leave to give the special matters in evidence, and under the plea of payment filed a specification of facts.

On trial, the verdict was for the plaintiff and judgment thereon was entered November 28th 1857.

The record was removed to the Supreme Court, the judgment affirmed and *remittitur* filed in the court below January 3d 1860.

March 11th 1859, and during the pendency of the case in the Supreme Court, a *scire facias* on the original judgment, " Hood & Co. *v.* Robert Fulton, Sr., with notice to terre-tenant," was issued, and returned " served June 6th 1859," but whether served upon the assignee or not did not appear by the record. It appears to be assumed by the auditor, counsel, and in the Supreme Court, that it was not served on the assignee personally, and that Fulton continued to occupy the land, and paid rent to his assignee, and judgment by default was taken and entered on the judgment or lien docket as follows: " 1859, May, 39, Fulton, Robert, Sr. Hood & Co. June 6, 1859, $     ."

A rule was granted to strike off this judgment, which, having been continued until the decision in the Supreme Court, was discharged by consent, September 28th 1861, and the amount liquidated as of June 6th 1859, at $12,291.49.

A *scire facias* in same form on this judgment was issued May 3d 1864, also returned " served," judgment taken for want of

[In re Fulton's Estate.]

an appearance May 17th 1864, and the amount liquidated at $15,940.01.

3. On August 14th 1854, William Larimer, Jr., obtained a judgment by confession for $1000.37 against Robert Fulton, Sr. A *scire facias* was issued January 25th 1859, on this judgment, to the use of "John Tintsman" against "Robert Fulton, Sr., with notice to Adam Tintsman, assignee of said Robert Fulton, Sr., terre tenant." The death of Adam Tintsman was suggested February 27th 1864, and James A. Logan substituted as terre-tenant. March 1st 1864, judgment was taken against defendants and terre-tenant, and liquidated at $1547.21.

Colonel Richard Coulter issued this *scire facias* as attorney of the plaintiff. He entered the military service of the United States, and continued in it until after this judgment. The auditor found that the Larimer judgment should have precedence over Hood & Co.'s judgment, although both were entered the same day. A *fi. fa.* was issued on Hood's last judgment to August Term 1864, and a *venditioni* to November Term 1864, under which the land was sold to Hood & Co. for $10,000, and the proceeds brought into court for distribution.

Before the auditor it was contended by John Tintsman, Martin Tintsman, and Logan, the assignee, that Hood's judgment was invalid as a lien,

1st. Because, Fulton having made an assignment for the benefit of creditors, the assignee became terre-tenant of the land, and the assignee not having been made a party to the writs of *scire facias*, the lien on the land was lost.

2d. Because the original judgment having been opened, and the jury having found a *general* verdict for plaintiff, and not for a specific sum, the verdict is only for costs.

3d. Because the judgment on the *scire facias* in 1859 not having been liquidated on the judgment-docket, the lien was lost as to subsequent judgment-creditors. Hood & Co. objected to the Larimer and Kifer judgments that they lost their liens because judgments of revival were not rendered until more than five years from the issuing of the respective writs of *scire facias*.

The auditor overruled all these objections, gave priority to the Kifer and Larimer judgments over Hood's, and, after awarding part of the fund to prior claims, distributed the balance,

To Larimer, for use of J. Tintsman, in full . . $1456.73
" Kifer, for use of M. O. Tintsman, in full . . 332.61
" Hood & Co. . . . . . . . 5785.00

The report was confirmed *pro forma*, October 25th 1865, and an appeal taken to the Supreme Court, where the same questions were presented.

*Corson & Fulton*, for Hood & Co., appellants.—As to the

[In re Fulton's Estate.]

Larimer and Kifer judgments. The Act of March 26th 1827 declares that issuing a *scire facias* shall not have the effect of continuing the lien of a judgment more than five years from the day on which the *scire facias* may have issued; and therefore the lien of these judgments expired on the 25th and 31st days of January 1864 respectively. They would not be continued for five years from the death of the assignee, because the land was not his estate, nor the judgments his debts; he was a naked trustee. Nor is it an excuse that there was no successor to the assignee on whom to serve the writ; it might have been served on Fulton, who remained on the land. General Coulter's absence might have been supplied by another attorney.

The law assumes that by due diligence a judgment of revival can be obtained in five years: Meason's Estate, 4 Watts 344. The duration of liens should not depend on anything not of record.

Hood's *scire facias* was issued in due time against Fulton, with notice to the terre-tenant. Fulton resided on the land, and it was enough to serve it on him: Dohner's Appeal, 1 Barr 101. The assignor continues the terre-tenant and owner of the fee, the assignee is his mere agent to sell the land. The issue was to try the *validity* of the judgment, not its amount: Fulton *v.* Hood, 10 Casey 365. If nothing had been due, the revival should not have been allowed; and besides, another judgment was afterwards entered for the amount due.

If the objection that the judgment was not liquidated is good, it applies to the other judgments which are in the same situation. But the Act of Assembly requires the formalities suggested, only as to the original judgment, which in this case is regular.

The judgment-docket is now treated as a judgment-index: Ferguson *v.* Staver, 4 Wright 216; Act of April 22d 1856, Purd. 576, pl. 26. Was this judgment well indexed? Did it point fully to the record? If so, no one suffered or could suffer, and the lien is valid.

*Marchand, Foster* and *Laird*, for other creditors and for the assignee.—The assignee was the legal holder of the fee, and therefore the act requires service on him. This was in effect decided in Gloninger *v.* Hazard, 6 Wright 389. The occupier on whom service may be made, is one coming in under the terre-tenant: Clippenger *v.* Miller, 1 Pa. Rep. 71. Fulton was not such occupier. The record shows that the verdict was simply for the plaintiffs. The leave to withdraw the pleadings and not withdrawing them was an abandonment of the permission, and the trial was on the first pleadings: Beal *v.* Commonwealth, 16 S. & R. 150; Turnpike Co. *v.* McCullough, 1 Casey 203. One of the pleas being payment and a verdict for no specific sum, the presumption as to all but the parties would be that the debt was paid;

[In re Fulton's Estate.]

the transfer to the judgment-docket indicating no sum, would lead to the conclusion that the plaintiffs gained nothing by their verdict.

It is necessary that the amount of the judgment on a *scire facias*, as well as on the original entry, should appear on the judgment-docket. Subsequent judgment-creditors are not bound to look further than the judgment-docket: Mann's Appeal, 1 Barr 24; Bear *v.* Patterson, 3 W. & S. 233; Mehaffey's Appeal, 7 Id. 200; Hance's Appeal, 1 Barr 408; Ridgway, Budd & Co.'s Appeal, 3 Harris 177; Crutcher *v.* Commonwealth, 1 Whart. 340; Stephens' Executor's Appeal, 2 Watts 9.

By the Act of April 22d 1856, the assignee is a purchaser protected against a lien not served on him. This act being *in pari materia* with Act of March 29th 1827, must be construed with it, and as every acquisition of land, not by descent, is a purchase, an assignee for creditors is within its provisions, and Hood & Co.'s judgment not having been entered according to the provisions of that act, it is not a lien, and they could not contest the claim of judgment-creditors. The fund awarded to Hood & Co. will therefore go to the assignee for the general creditors, no other part of the distribution being questioned.

The opinion of the court was delivered, January 8th 1866, by

AGNEW, J.—These appeals by Hood & Co., judgment-creditors of Robert Fulton and James A. Logan, his voluntary assignee, were taken from a decree distributing the proceeds of a sheriff's sale of his real estate.

The first question of priority arises between the judgments of Benjamin Kifer, for use, and William Larimer, Jr., for use, on the one side, and the judgment of Hood & Co. on the other. Kifer's and Larimer's judgments were prior to Hood & Co.'s, and writs of *scire facias* to revive them were issued in time. But it is alleged by Hood & Co., that they lost their liens because judgments of revival were not rendered until after the expiration of five years from the date of the issuing of the writs of *sci. fa.* Kifer's judgment was entered July 18th 1854, the *sci. fa.* issued January 31st 1859, and judgment of revival was taken March 1st 1864. Larimer's judgment was entered August 14th 1854, the *sci. fa.* issued January 25th 1859, and the judgment of revival taken March 1st 1864. In each case the five years had expired in the January preceding the judgment of revival, and by the letter as well as the judicial construction of the Act of 26th March 1827, the lien was gone. That law expressly prohibits the continuation of the lien longer than five years, unless a writ of *sci. fa.* be sued out within the five years, notwithstanding any execution issued, term of credit, stay or any other condition or contingency attached to the judgment. It then proceeds in these words,

[In re Fulton's Estate.]

" nor shall the revival of such judgment by agreement as aforesaid, or the *issuing* of a *sci. fa.* either with or without entry of judgment thereon, have the effect of continuing such lien for a longer period than five years from the day on which it may be revived as aforesaid, or such *sci. fa.* may have issued." It was decided under terms of the Act of 1798, which expressly directs the court to give judgment of revival for *another* period of five years, that the judgment extends the second period from the termination of the first period of five years: Pool *v.* Williamson, 4 Rawle 317. But in Fricker's Appeal, 1 Watts 395, and Ebright *v.* The Bank, Id. 398, it was held shortly after the passage of the Act of 1827, that this law was intended to confine the duration of liens to the strict letter of the act, and to correct the latitude of construction in which the courts had indulged under the Act of 1798. See also the remarks in Davis *v.* Eberman, 8 Harris 259, and Armstrong's Appeal, 5 W. & S. 354. Even under the Act of 1798, it was determined in Vitry *v.* Dauci, 3 Rawle 9, that a *sci. fa.* in which judgment was delayed for seven years did not continue the lien. In The Westmoreland Bank *v.* Rainey, 1 Watts 26, it was also decided that the issuing of a *sci. fa.* within five years, but to which the return was *nihil*, and an *alias* did not issue for five terms, nor until the five years had expired, did not continue the lien. If the return had been *tarde venit*, or if an effective service on the first writ had been made on the terretenant, as held by our brother Strong, in Silverthorn *v.* Townsend, 1 Wright 263, the lapse of time before the issuing of the *alias* would not have postponed. But under the Act of 1827, the second period of the lien is limited to five years from the issuing of the *sci. fa.*, and so this court has held in Meason's Estate, 4 Watts 344, and kindred cases. Rogers, J., in Meason's Estate, remarking upon this point says : " The law does not recognise the possibility, when due diligence has been used, that the plaintiff can fail to obtain a judgment of revival within the period of five years ; and what is due diligence is indicated by the act, viz., having a judgment of revival within that time." This construction of the act was recognised, and the language of Judge Rogers quoted, in Silverthorn *v.* Townsend, *supra.*

The judgments of Kifer and Larimer therefore lost their liens, unless some valid excuse existed, for the *laches* in prosecuting the writs of *sci. fa.* The reasons given for the delay are the death of Adam Tintsman, the voluntary assignee, and the absence in military service of General Coulter, the counsel who issued the writs. But they are insufficient. It is only a legal necessity which can be imputed as an exception into the terms of the law. " The rule (as said by Rogers, J., in Ebright *v.* The Bank, *supra*) which the legislature have prescribed, has the merit of simplicity, and should not be departed from except in a case of

1 P. F. SMITH—14

necessity, where, for instance, from legal principle a *scire facias* cannot properly issue." But no such reason existed here. Tintsman died on the 7th of June 1863. His trust, as a voluntary assignee, did not fail, but fell within the powers of the Court of Common Pleas, and a successor could have been appointed long before the expiration of the lien, had it been necessary to make him a party to the *sci. fa.* as a terre-tenant. General Coulter went into the service in 1861, and if his absence could be supposed to afford even a temporary excuse, there was ample time to employ other counsel. The auditor treated the death of Tintsman, the trustee, as having the same effect upon the trust estate which the death of a decedent has upon his own estate under the provisions of the 25th section of the Act of 24th February 1834, continuing the lien of the judgments for five years thereafter. But Tintsman had no estate or interest to be bound, while the judgment was neither against him nor for his debt. He was but the instrument or agent of Robert Fulton, selected by him to distribute his estate among his creditors. The law was not intended for such a case. The 24th section provides for the lien of the debts of the decedent, not of record, upon his estate ; and the 25th provides for the lien of record debts. The purpose was to save the claims of the creditors of the decedent, and to put all upon an equal footing for five years, a period deemed to be reasonable for the settlement of his affairs. But when Adam Tintsman died, his connection with the estate was absolutely gone, and it fell into the lap of the law, which proceeds by the appointment of a successor. The lien of the judgments against Robert Fulton was not continued by Tintsman's death.

But failing to preserve the lien of their own judgments, the claimants under Kifer and Larimer contend that the lien of Hood & Co.'s judgment is also gone. Three grounds are set up—1. That the judgment having been opened to let the defendant into a defence, it was not closed by a verdict for a sum certain, and therefore stands only for costs.

2. That Tintsman, the assignee, was not made a party to the revival as terre-tenant.

3. That the judgment on the *scire facias* not being liquidated and entered on the judgment-docket, is thereby postponed. None of these objections are sound. Hood & Co.'s judgment was confessed upon a bond, which was a legal acknowledgment of an indebtedness. It was for a sum certain, and therefore a debt in law ; and by the terms imposed in opening the judgment, its lien was to remain. The pleas were *non est factum*, and payment, with leave to give the special matters in evidence. The verdict was a general verdict for the plaintiff. This negatived all the pleas. The first plea denied the instrument but the verdict established it. Payment, the second plea, admitted the debt, and put

[In re Fulton's Estate.]

the defendant on proof of its satisfaction, while the verdict generally for the plaintiff, was a finding wholly against the plea. The words, with leave to give the special matters in evidence, are also an affirmative plea, implying an equitable defence arising out of the circumstances, which cast on the defendant the proof of those circumstances: F. & M. Turnpike Co. v. McCullough, 1 Casey 304. But the verdict also negatived this defence. There was no plea which put the costs in issue. They did not enter into the questions tried. They are only incidental to the result. A general finding for the plaintiff was therefore a finding wholly against the pleas of the defendant. This left the debt to stand as it stood before opening, and when judgment was entered on the verdict it closed the door which had been opened for relief, and the judgment stood as it had been. The opening of a judgment does not destroy it, but simply suspends its conclusiveness until the merits of the controversy can be tried, and the rightful existence of the debt be ascertained. But the true interpretation of a general verdict against all the pleas of the defendant certainly is, that the debt remains as it stood in the judgment. A general judgment, therefore, upon a general verdict is clearly a final judgment for the debt. This construction of the verdict and judgment is fortified by those cases which decide that the judgment is final, and the lien begins without liquidation, whenever the claim in the action is for a sum certain, or can be ascertained by calculation from the demand set forth in the declaration: Lewis v. Smith, 2 S. & R. 142; Clippenger v. Miller, 1 Penna. R. 72; Commonwealth v. Baldwin, 1 Watts 54; Austin v. Commonwealth, Id. 374; Sellers v. Burke, 11 Wright 344, opinion by Read, J.

The next question, whether an assignee under a voluntary assignment must be made a terre-tenant in the revival, was raised in Gloninger v. Hassinger, 6 Wright 400, but not decided by this court, because the parties were not before them, the proceedings being by bill in equity. The question is now directly before us. Perhaps nothing is better settled in this state, by uniform and numerous decisions, than this, that a voluntary assignee is the mere representative of the debtor, enjoying his rights only, and no others; and is bound where he would be bound; that he is not the representative of the creditors, and is not clothed with their powers; that he is but a volunteer and not a bonâ fide purchaser for value. Nor are the creditors for whom he holds his trust such purchasers under his deed. He is in short but the hand of the assignor in the distribution of his estate among his creditors, and has no title or real interest in the fund, and he cannot appeal from a decree distributing it among the creditors: Knowles v. Lord, 4 Wharton 500; Wolf v. Eichelberger, 2 Penna. R. 346; Twelves v. Williams, 6 Wharton 485, 492; Vandike v. Christ, 7 W. & S. 373; Luckenbach v. Buchenstein, 5 W. & S. 145; In

[In re Fulton's Estate.]

re Roberts, 2 Barr 372; Ludwig *v.* Highley, 5 Barr 133; Okie *v.* Kelly, 2 Jones 326; Foulke *v.* Harding, 1 Harris 245; Bullitt & Fairthorne *v.* M. E. Church, 2 Casey 110, 111; Mellon's Appeal, 8 Casey 128-9. The case in 2 Casey decides that such voluntary assignee so purely represents the debtor that he cannot even avoid a prior assignment, which would be void against the creditors. The case in 8 Casey, opinion by Strong, J., covers the whole ground as to the character of the assignee, and decides that he cannot take an appeal from a decree of distribution of the fund in his hands. Such being the character and the rights of a voluntary assignee, he is bound by the judgments rendered against the debtor before his trust began; and cannot claim to have notice of their revival, as a *bonâ fide* purchaser for value. He does not stand as the representative of the creditors, and therefore entitled to notice on their behalf—indeed they themselves are not terre-tenants, nor entitled to service as such. Even a mortgage creditor who holds the legal title is not a terre-tenant. Neither judgment nor mortgage creditor can intervene either to set aside a judgment or prevent its revival, except for fraud; and there it is done not by defending in the shoes of the defendant, but by a collateral proceeding in his own behalf. The assignee is but a volunteer, who takes subject to the judgments against the debtor; who has no estate of his own to protect as a purchaser, and who leaves the creditors interested in the assignment, in this as in all other cases, to the protection of that self-interest in their debtor, which prompts every man to defend himself against false claims; while for his collusion to defraud them they have their own appropriate remedy. In this case Fulton had not only the ordinary motive of self-interest to defend against an unfounded claim (which he did to the uttermost, as will be seen in the reported case of Fulton *v.* Hood & Co., 10 Casey 365), but he had also a resulting interest in the land itself. It is only a purchaser for value who takes an estate bound by the judgment, that can claim to be made a party to the revival to defend *pro interesse suo*: Clippenger *v.* Miller, 1 Penna. R. 71; Catlin *v.* Robinson, 2 Watts 379; Dengler *v.* Kiehner, 1 Harris 38. This is not only the result of judicial decision, but is indicated by the legislation in relation to judgments. The third section of the Act of 21st March 1772, regulating the signing of judgments, enacts that: " Such judgments as against *purchasers bonâ fide for valuable consideration,* of lands, tenements and hereditaments to be charged thereby, shall in consideration of law be judgments only from such time as they shall be so signed." Such purchasers only are protected by the statute against the lien by relation back to a prior date, which before had been the rule of the common law. Thus also, it is only purchasers *bonâ fide,* without notice, who are protected by the proviso to the first section of the Act of 3d April

[In re Fulton's Estate.]

1843, against the curative provisions of this act as to omissions to make the proper entries on the judgment-docket. When we come, therefore, to the Acts of 4th April 1798, and 26th March 1827, requiring service on the terre-tenants, or the occupiers of the land, it is manifest that their true object was to protect those who are the owners of the land; those who, having paid its value to the debtor in good faith, are entitled to have an opportunity of defending their own interests. But the mere volunteer, who has paid no consideration, who has no estate of his own, who performs only an office for the debtor, and has none of the powers of creditors who themselves cannot defend, is not entitled to notice to defend as a terre-tenant.

There are authorities which bear directly on the case before us: Dohner's Appeal, 1 Barr 101, is in point. It was there held that service on the debtor alone, who remained in possession, was good to preserve the lien. Rogers, J., puts the case on two grounds: first, that service was good upon the debtor as an occupier under the alternative of the Act of 1798, his relation being both that of tenant under his assignee, and of owner by reason of his resulting trust; and, secondly, that an assignee is not a purchaser, but the mere agent of the debtor, who is in one sense still the owner of the fee. We must not, he says, throw unnecessary difficulties in the way of creditors; and he puts the question of notice to the plaintiff of the deed of assignment out of the way, stating that even if he had express notice, the service on the debtor alone would be good notwithstanding. In the present case Robert Fulton never left the land, but continued to live where he had lived for many years, and paid rent to Tintsman; the auditor stating as his conclusion from all the evidence, that the possession of the assignee was by renting the premises to various persons and receiving the rents. In Geiger v. Hill, 1 Barr 509, we have an analogous case. There the defendant had sold and conveyed the land to one who in turn had sold it to another, the defendants still remaining in possession; and it was held that a revival by service on the defendant alone continued the lien under the alternative provisions of the Act of 1798, allowing service to be made on the occupier. Gibson, C. J., remarks of this provision: "It put the occupant in the place of the terre-tenant, for the reason that the Act of 1772 put a lessee in the place of his lessor, or the person to receive a declaration in ejectment." It is to be noticed that in Geiger v. Hill the vendee had a stronger claim to service as a terre-tenant than a voluntary assignee, by reason of his personal interest in the land itself. These cases are strengthened by The Commonwealth v. Lelar et al., 1 Harris 26. That was a revival by service on the debtor alone, after his discharge as an insolvent debtor and the appointment of a trustee. The trustee never acted, and after a lapse of seventeen years a second was appointed, who

sold the premises. The delay was a point made by this court, but they did not rest the opinion on it alone, and Bell, J., proceeded to say : " But waiving this, and admitting that by force of the mere nomination as assignee they acquired a power over, and even an estate in the land, it must be conceded it was but for a limited and special purpose, which, while it remained unexecuted, left an interest in the insolvent sufficient, when coupled with the continued occupancy, to constitute him tenant of the land, within the meaning of the statute requiring revival of writs of *scire facias* upon terre-tenants or occupiers ; or rather his whole estate not being divested by the operation of law, he so far continued to be owner as sufficiently to subserve the purpose of the statute, which was to give notice to those having a beneficial interest in the encumbered premises ; an object much more satisfactorily effected by service on the debtor in possession than on the titular trustees." That case derives greater force from the distinction taken by Gibson, C. J., in the case of Okie *v.* Kelly, 2 Jones 326, between a statutory representative or assignee and one under a voluntary deed, where, in speaking of the statute of 13 Elizabeth, he says : " A creditor, an executor or administrator of the fraudulent debtor, or his assignees in bankruptcy or insolvency representing the creditors—but not a subsequent assignee for the benefit of creditors, representing as he does the person of the debtor—may proceed by action to judgment and execution of the property in the hands of the assignee, as if it had not passed by the fraudulent assignment." He then states as the reason, that the voluntary assignee stands in the place of the assignor, and is bound where he is bound, and it is settled that a fraudulent conveyance concludes the parties to it. For all these reasons we conclude that the omission to serve the *scire facias* on Tintsman in the case of Hood & Co. *v.* Fulton does not postpone their judgment.

It remains, therefore, to consider how far the omission to liquidate the judgment on the *scire facias* and place the sum on the judgment-docket operated to postpone Hood & Co. to Kifer and Larimer. The revival was actually carried into the judgment-docket, but the complaint is that the sum for which judgment was rendered was not stated. That in questions of distribution the judgment or lien docket regulates the standing of the lien-creditors, and the sums to be paid to them, is not doubted as a general rule : Bear *v.* Patterson, 3 W. & S. 233 ; Mehaffy's Appeal, 7 Id. 200 ; Mann's Appeal, 1 Barr 24 ; Ridgway, Budd & Co.'s Appeal, 3 Harris 177 ; Jones's Estate, 3 Casey 336 ; York Bank's Appeal, 12 Id. 458 ; Stephens's Ex'rs. Appeal, 2 Wright 14. The design of the Act of 29th March 1827, requiring judgments to be entered on a judgment-docket in the order of time in which they were rendered, was to furnish a full knowledge of the liens

[In re Fulton's Estate.]

to subsequent purchasers or lien-creditors. Notice is the true purpose. Hence it was decided in The York Bank's Appeal, 12 Casey 458, that if a subsequent encumbrancer have *actual* notice of a judgment defectively entered before his rights have attached, it is equivalent to the constructive notice required to be given by an entry in the judgment-docket. This has been since recognised by our brother Thompson in Stephens' Executor's Appeal, *supra*. An analogous principle has also been applied in the case of an unrecorded mortgage of which a party had actual notice.

Notice being the object of law, the prior judgment-creditors, Kifer and Larimer, suffered no injury from the omission of Hood & Co.'s revived judgment from the judgment-docket. They gave no credit upon the faith of that record, and if they could be interested in the subsequent state of the record, they had notice from the first entry. It was only the judgment of revival that was omitted. Nor can they claim any benefit from the fact that the revival of the Kifer and Larimer judgments in 1864 was subsequent to the revival of Hood & Co.'s judgment. It was not the omission of Hood & Co.'s revival from the judgment-docket, but their own neglect to prosecute their writs of *scire facias* in time, which caused the loss of their original lien. Besides this, their judgments of revival did not become fresh liens on the estate, Fulton's title having passed from him in 1856 by the assignment, leaving only his resulting interest in the trust subject to the fresh lien.

It is only a subsequent encumbrancer who can claim to have suffered injury from a want of notice of a prior lien, but here Kifer and Larimer having the advantage of a prior lien, lost it by neglect, and suffered the estate which it bound to slip through their fingers. Certainly they are not parties who can claim the benefit of the Act of 1827, requiring entries to be made in the judgment-docket.

The contest appears to have been narrowed to the claim of the Kifer and Larimer judgments on the one hand, and that of Hood & Co. on the other. From what has been said it will be seen that the claim of Logan the assignee is without foundation. The *pro forma* decree of the court below is therefore reversed as to the Kifer and Larimer judgments, and the sums awarded to them, making $1789.34, are ordered to be paid to Hood & Co.'s judgment. This sum, added to that awarded to Hood & Co. by the auditor, gives the total sum of $7539.34, which is decreed to be paid to them; and it is ordered that Martin O. Tintsman, assignee of the Kifer judgment, and John Tintsman, assignee of the Larimer judgment, pay the costs of Hood & Co.'s appeal; and that James A. Logan pay the costs of his own appeal.