Opinion by
Head, J.,
We think it must now be regarded as the settled law of this state that, as to the persons and subjects within the purview of the national bankruptcy act of July 1, 1898, our own Act of June 4, 1901, P. L. 404, relating to insolvency, never became operative: Potts v. Smith Mfg. Co., 25 Pa. Superior Ct. 206. The assignor, in the case before us, was a person to whom the provisions of the act of congress would apply. The learned court below was therefore clearly right in holding that the distribution of the assigned estate could not be controlled by the provisions of the act of 1901.
On October 18, 1905, the date when Peckham made a voluntary assignment for the benefit of his creditors, he was the owner of both personal and real estate. The real estate had been valuably improved with a large gristmill and other buildings and was bound by the lien of a judgment of about $7,300 in favor of Lesher, the appellant. These buildings were insured and the policies contained a provision for the security or benefit of Lesher, as .follows, viz.: “Subject to all the terms and conditions of this policy it is hereby further agreed that such loss or damage as shall have been ascertained and proven to be due under this policy to Samuel F. Peckham, shall be “held payable for his account unto Isaac Lesher, as his interest ' may appear.”
At the date of the assignment Peckham Was further indebted upon notes, accounts and what may be generally called unsecured claims, in the sum of about $11,000, of which upwards of $3,500 were due and owing to Lesher, the appellant, the balance to a large number of persons. -Thus, in round numbers, *333 the assignor, when he made his deed, owed about $18,000, of which the appellant held about $11,000. All of this was the personal indebtedness of the assignor, notwithstanding the fact that judgment had been entered on one note, and the further fact that the judgment creditor had provided against any diminution of the value of his lien in case of fire, by acquiring a right to the insurance money which would stand in the place of so much of the property as might be destroyed: Peoples St. Ry. Co. v. Spencer, 156 Pa. 85.
On October 13, 1905, five days before the assignment, the buildings of the assignor were burned and a loss resulted the amount of which was, a few months later, amicably adjusted at $4,575. At the time of the assignment, then, the situation was this: Lesher, the appellant, held eleven-eighteenths of the entire indebtedness of the assignor, all of the other creditors holding the remaining seven-eighteenths. The deed of assignment did not attempt to make any preference or distinction among the creditors; but the assigned estate, subject to such vested rights as could not be disturbed by the assignor, was conveyed to all of his creditors, and the quantity of interest that passed to each was measured by the proportion in which his own debt stood to the entire indebtedness.
In addition to the rights which the appellant, in common with all of the other creditors, secured under and by virtue of the deed of assignment, the former had, by his vigilance or good fortune, acquired some rights exclusive to himself, in which the other creditors had no share. By the confession of judgment dn his note, long prior to the assignment, he had obtained a first lien against the real estate of the assignor, and by the provision in the insurance policies, already quoted, he had secured a like lien upon any fund that might accrue from those policies to make good any loss in value of the real estate already bound by his judgment.
In the settlement of assigned estates usually the first fund for distribution would be that derived from the sale of the personalty of the assignor. Had that been the case in this instance the main question now before us would probably not have arisen, because it is difficult to see what objection could *334 have then successfully been made to the allowance, to every creditor alike including the appellant, of a share of that fund pro rated on the indebtedness held by each. That was the manifest object and requirement of the deed of trust and all who claimed under that instrument would necessarily be bound by its terms. This would have resulted in giving to the appellant, approximately, eleven-eighteenths of the personal fund and still left him at perfect liberty to secure, in addition, whatever could be gathered from his liens, provided only that by pursuing all of his remedies and using all of his collateral securities, he received no more than was due to him at the time of the assignment.
But in this case the settlement of the estate was worked out in a different order. The insurance companies promptly adjusted the fire loss at $4,575 and, on December 18, 1905, that sum was paid by them on the joint receipt of the assured, the assignees and Lesher, and turned over to the latter on account of his lien. The assignees had also at once obtained an order of sale for the real estate and sold it, and, after confirmation, the net proceeds of the sale, about $2,700, were again turned over to Lesher on account of his judgment. On January 26, 1906, he entered on the record of the judgment his receipt for both of said sums, and it seems to be agreed that they were sufficient to cover the full amount of the debt, interest and costs of the judgment.
The auditor who, after the coming in and confirmation of the account, was appointed to make distribution, experienced no difficulty until he reached the personal fund. The appellant claimed out of that fund a pro rata share based on the entire amount of his indebtedness as it stood on the day of the assignment, contending that he was entitled to pursue all of his remedies and use all of his securities without having the efficiency of anyone diminished by the fruits derived from any other, so long as the result of all was to give him less than his debt. Against the objections of other creditors the auditor so held. The learned court below, however, reversed the auditor and decreed that appellant’s share must be based on the amount of his unsecured claims only, thus reducing the measure of his *335 participation from about $11,000 to about $3,600. Hence this appeal.
The legal principle governing such distributions, founded oii and growing out of the nature and effect of the deed of trust or assignment, has been frequently laid down by the courts. The following excerpts from some of the familiar cases will plainly disclose it. In Miller’s Appeal, 35 Pa. 481, Strong, J., thus stated it: “The court below was of opinion that the dividend should be made upon the sum due at the time of the distribution, and not upon the sum due at the time of the creation of the trust. It is not easy to see upon what principle the judgment of the court was founded. By the deed of assignment, the equitable ownership of all the assigned property passed to the creditors. They became joint proprietors, and each creditor owned such a proportional part of the whole as the debt due to him was of the aggregate of the debts. The extent of his interest was fixed by the deed of trust. . . . Having thus a fixed and vested interest, having thus been constituted by the deed of assignment an owner of a proportionate part of the trust fund, how can his proportion be lessened by the fact that he has a collateral security for his demand, or by his use of such security? .... But it is not as a creditor that he is entitled to a distributive share of the trust fund. His rights are those of an owner by virtue of the deed of assignment. The amount of the debt due to him is important only so far as it determines the extent of his ownership. The reduction of that debt, therefore, after the creation of the trust, and after his ownership had become vested, it would seem, must be immaterial.” In Graeff’s Appeal, 79 Pa. 146, Sharswood, J., says: “The assignment was in trust for all his creditors then existing, pro rata, without regard to the nature of the securities they held. So far as regards the assigned estate, they were no longer creditors, but equitable owners. Graeff Was not an equitable owner of as many separate shares as he had distinct debts. His interest was to the extent of his whole claim on the estate. The payment in full of one judgment no more changed his position than would the payment of one item of a book account. It cannot alter the case that the real estate on which the judg *336 ments were liens was first resorted to. ... It is true the judgments were satisfied — the debts were paid in full; but that did not pro tanto extinguish his title as one of the original cestui que trustent, until his entire interest was extinguished.” To the same effect are Brough’s Estate, 71 Pa. 460; Morris v. Olwine, 22 Pa. 441; Murphy Co.’s Estate, 214 Pa. 258. Pages of elaboration would add nothing to the force or lucidity of the rule thus enunciated. Its application to the case in hand compels the conclusion that by the delivery of the deed of assignment, the attitude of the appellant towards the assigned estate underwent a change. Thenceforward he was one of the equitable owners of all that was assigned. The extent of his interest was measured by the amount of the debt due him at the date of the assignment, which was approximately eleven-eighteenths of the whole. The right to use all of that interest in the payment of his debt was vested in him by the deed and to the exercise of that right no creditor could object. The plan of distribution followed by the auditor was, therefore, correct and the learned court below fell into error in refusing to adopt it.
But, it has been suggested, a distinction should be taken between the fund arising from the sale of the real estate and that which came in from the insurance policies. On what principle? True the fire occurred a few days before the assignment. How did or could that fact affect the situation of Lesher on the date of the assignment? Before the fire his interest in the insurance was just what it would have been had the policies been formally assigned to him as collateral security for his debt: Stainer for use v. Insurance Co., 13 Pa. Superior Ct. 25. The fire made no change in that interest. It applied no money to the indebtedness due the appellant and reduced it not a farthing. That remained on the day of the assignment just what it was the day before the fire. As we have shown the amount due and owing to the appellant when the deed was executed fixed the share of the assigned estate that passed to him. That portion was conveyed to him for the express purpose of .enabling him, if possible, to recoup thereout all of the debt due to him regardless of the number or character of the obligations *337 by which it Was evidenced. Nothing short of a payment of all that was due him when the deed was made, could wrest from his grasp that with which the deed had invested him. We are unable therefore to find any solid ground on which to rest the distinction suggested.
We see no occasion to prolong this opinion by a discussion of the only remaining question raised by this appeal. The reasons given by the learned court below for allowing the claim made by the Whitmer estate seem to be sufficient to support the conclusion reached, and we adopt them without further comment.
So much of the decree as reduced the distributive share allowed by the auditor to Isaac Lesher, the appellant, is now reversed and set aside. In all other respects the decree is affirmed and the record is remitted with, direction that, distribution be made as originally reported by the .auditor. The costs of this appeal to be paid by the appellees. ,