## Fulton's Estate.

*Decedents' estates—Debts of decedents—Interest—Insolvency—Debt secured by collateral.*

Where a person dies insolvent, unsecured creditors are allowed interest to the date of the death. Where a creditor holds collateral, and sells the same after the death of the decedent for a sum insufficient to pay the principal and interest to date of sale, he may have recourse for the balance to the general estate of the decedent, but he will not be allowed interest accruing after the date of the sale of the collateral.

Argued Nov. 3, 1916. Appeal, No. 266, Oct. T., 1916, by Horace E. Smyser, from decree of O. C. Philadelphia Co., Jan. T., 1913, No. 206, dismissing exceptions to adjudication in Estate of Samuel M. Fulton, deceased. Before ORLADY, P. J., PORTER, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Affirmed.

## 438                         FULTON'S ESTATE.

Exceptions to adjudication.

GEST, J., filed an opinion which was in part as follows:

In the present case the decedent died on October 24, 1912, insolvent, and the exceptant creditor held his note dated August 29, 1912, for $17,740.54, which with interest to the date of decedent's death amounted to $17,-906.11.  The exceptant held as security certain bank stock, which he sold on March 15, 1913, realizing $12,992, which was applied upon the note.  On the first distribution the exceptant was allowed with the other creditors a dividend of eight per cent. or $1,432.39.  This was obviously correct, because the dividend did not equal the amount still due upon the note.

By the schedule of distribution filed after the audit of the second account, the claimant was awarded a further dividend of $3,900.56, making with the prior dividend and the amount received from the sale of the collateral, the sum of $18,325.97, that is, the original amount of the note, $17,740.54, with interest, $585.43, up to March 15, 1913, the date of the sale of the collateral.  The exceptant claims that he was entitled to further interest calculating the same up to April 7, 1916, the date of the filing of the second schedule of distribution, and in order to present his position clearly, we add his method of calculation.

The amount of the note, ................. $17,740.54
Interest on note from date, Aug. 29, 1912,
  (allowed in first adjudication) to the time
  of the application of the proceeds of the
  sale of the stock, March 29, 1913, ........   620.91
                                       18,361.45
Proceeds of sale of stock, ................ 12,992.00

Balance owing after crediting proceeds of
  collateral, ...........................   5,369.45

437, (1917).]          Opinion of Court below.

Interest on this balance from March 29, 1913,
  to the date of the first adjudication, June
  29, 1914, .............................          402.70

|  |  |
|---|---:|
|  | 5,772.15 |
| Amount of dividend awarded June 29, 1914,.. | 1,432.49 |

|  |  |
|---|---:|
| Balance owing after crediting first dividend,. | 4,339.66 |

Interest on this balance from June 29, 1914,
  to April 7, 1916, the time of the filing of
  the second schedule of distribution, ...... ´          461.45

|  |  |
|---|---:|
|  | 4,801.11 |
| Amount awarded exceptant, .............. | 3,900.56 |

|  |  |
|---|---:|
| Loss by exceptant by ruling to which he excepts, ............................... | 900.55 |

The learned counsel for the exceptant argues, that
since a creditor may hold his collateral security until he
is paid in full, he might, if he had not sold his security
when he did, but had retained it, have received a larger
dividend on the second or any subsequent distribution,
and that by then selling his collateral he would have obtained the full amount and interest. The answer is, that
the creditor was not under any obligation to sell his collateral security at that particular time, even if he had
been requested to do so. The law is well stated in Mueller v. Nichols, 50 Ill. App. 663, "The pledgee of negotiable paper is bound to use reasonable diligence for its
collection, but the pledge of either chattels or choses in
action is not bound to sell the same at the request of the
pledgor." See Smouse v. Bail, 1 Grant 397. The creditor might have retained the collateral security until the
debt was paid or tendered in full, though he would have
taken the risk of the stock depreciating in value, as in
Moore v. Brooks, 2 Pa. C. C. R. 619. The creditor probably did what he thought was best for his own interest

440        FULTON'S ESTATE.

and sold the stock to the greatest advantage. But we cannot see what special rights he could retain after having parted with his collateral security. Thenceforth he could only rely upon his rights as a creditor to claim the same dividend as other creditors, provided, that the total amount received by him did not exceed the original debt plus interest up to the date of the sale of the collateral.

No case has been cited that appears to indicate a different principle. Keebler's Est., 4 D. R. 346, supports our views, and also Peterson v. Guarantee Trust Co., 4 Walker, 430, in which case the creditor of an insolvent estate was allowed interest to the date when the collateral was sold.

The method therefore, in which the present distribution should be made, is as follows: the exceptant is entitled to a dividend calculated on the amount of the original debt, plus interest to the date of the death of the decedent, however, not to exceed the amount of the debt plus interest up to the date of the sale of the collateral security, less the proceeds of sale of the collateral security, less the proceeds of sale of the collateral security and the dividends received in the meantime. In determining the net amount of the debt and interest due the rule of partial payments should be followed, that is, when a partial payment is made, if it exceeds the interest due at that time the surplus goes towards discharging the principal, and interest is thereafter to be computed on the balance of principal. If the payment is less than the interest, the surplus of interest must not be taken to augment the principal, but interest continues on the former principal until the payments taken together exceed the interest due, and then the surplus is to be applied towards discharging the principal, and so on. Bell's App., 4 Sadler 425; Buck v. Mutual Bldg. Assn., 49 Pa. Superior Ct. 128; Howell's Est., 13 W. N. C. 15; Unruh's Est., 5 D. R. 119, and there can be no doubt that the same rule applies in the distribution of an insolvent estate, where a creditor holds collateral security. Daus's Est.,

437, (1917).] Opinion of Court below—Opinion of the Court.

8 D. R. 326. Apparently the rule was not accurately observed in the calculation contained in the schedule, if so, the schedule may be amended on application to the auditing judge.

The exceptions are dismissed.

Horace E. Smyser appealed.

*Error assigned* was in dismissing exceptions to adjudication.

*Allen C. Wiest,* for appellant.—The dividend on the amount owing at decedent's death was proper: Hess's Est., 69 Pa. 272; Cairn's Est., 13 Philadelphia R. 350; Hagers's Est., 49 Pitts. L. J. (O. S.) 310; Weisse's Est., 6 Lanc. L. R. 136; Graeff's App., 79 Pa. 146.

If the trustee had not sold the stock until after the final distribution of Fulton's estate, Smyser would receive his interest to the day of the last payment: Peterson v. Guarantee Trust & Safe Dep. Co., 4 Walker 430.

The appellant should not be prejudiced by the action of the trustee in selling the stock before the final distribution: Patten's App., 45 Pa. 151.

There is no reason for applying, by analogy, the rules that interest must cease at death of decedent, at sale of property by sheriff, or at confirmation of sale by the court: Peterson v. Guarantee Trust & Safe Dep. Co., 4 Walker 430; Carver's App., 89 Pa. 276.

*Robert A. Beggs, Jr.,* for appellees, cited: Jamison's Est., 163 Pa. 143; Prudential Trust Co.'s Assignment, 223 Pa. 409; Daus's Est., 8 Dist. 326; Morgan's Est., 30 W. N. C. 509.

OPINION BY HEAD, J., March 7, 1917:

At the date of the death of Samuel M. Fulton, October 24, 1912, the appellant was his creditor. The debt was evidenced by a promissory note dated August 29, 1912. The estate of the decedent was insolvent. His death,

under such circumstances, practically effected an assignment of all of his property to his creditors and thereafter it belonged to them in proportion to the amount of the debt due to each. In such cases interest is calculated to the date of the death of the debtor and there it stops, so far as unsecured creditors are concerned. The legal rule applicable in such cases and the reasons for it have often been stated: Jamison's Est., 163 Pa. 143; Peckham's Est., 35 Pa. Superior Ct. 330; Blum Bros. v. Girard Nat. Bank, 248 Pa. 148.

But the appellant was also the pledgee of certain shares of bank stock which, through a trustee, he held as collateral security for the payment of his debt. Under the terms of the pledge he could not be compelled to surrender his security until his debt was paid in full. The insolvency or death of his debtor would in no way affect his right to the full use of his collateral. That right rested not on general laws disposing of the property of insolvent debtors, dead or alive, but on the contract of the parties. The fact that he thus had recourse to two funds in no way impaired his right to proceed against either or both so long as he did not claim or secure more than was justly due. As we said in Peckham's Est., supra: "He was entitled to pursue all of his remedies and use all of his securities without having the efficiency of any one diminished by the fruits derived from any other, so long as the result of all was to give him less than his debt": Miller's App., 35 Pa. 481; Graeff's App., 79 Pa. 146.

But it does not follow because the creditor had recourse to two funds, his rights as against each were identical. As against the fund produced by the sale of his collateral, he had the complete and exclusive right to charge the whole of his debt with interest to the date of the sale of the pledge. Had the security in the present case been adequate, his debt with interest would have been paid in full and no general creditor would have had cause for complaint. This conclusion necessarily follows from the contract that produced the pledge. If

authority be needed to sustain it, Peterson v. Guarantee Trust, Etc., Co., 4 Walker 430, would furnish it.

The application of these principles to the case in hand properly results in the consideration first of the consequences following the sale of the collateral on March 15, 1913, before the first adjudication of the decedent's estate. At that date the note with interest down to that time amounted to $18,361.45. The proceeds of the sale were $12,292. Their application to the debt left a remainder of $5,369.45, as to which the general fund only could be resorted to. But the creditor was entitled to his pro rata share of that fund based on his debt as it existed at the date of the death of the debtor. The learned court below, recognizing this principle, awarded him $1,432.49 on the adjudication of the first account. There still remained due $3,936.96. For some reason, not quite clear to us, but probably because no right to charge the collateral fund with interest after the death was recognized, there was allowed on the second adjudication but $3,900.56. The error is trifling and can be easily corrected on the return of this record or later.

It was not, however, to rectify this small error the present appeal was taken. It rests on the claim that appellant could and should recover interest down to the date of the confirmation of the second adjudication. We have attentively considered the supporting argument but are unable to regard it as sound. No one of the cases cited and relied on appears to us to warrant the conclusion urged upon us. Nor can we perceive that it is supported by just reasoning from established principles. The appellant has been permitted to pursue both of the remedies in his hands at the death of his debtor until both have been exhausted. He cannot successfully ask more. The assignments of error must therefore be overruled and the decree of the learned court below, with the slight modification indicated, must be affirmed.

Decree affirmed.