**FIDELITY–PHILADELPHIA TRUST CO. et al. v. PHILADELPHIA–GIRARD NAT. BANK,**

Circuit Court of Appeals, Third Circuit. June 24, 1929.

Rehearing Denied August 15, 1929.

No. 4049.

Percival H. Granger, Reber, Granger & Montgomery, Breeding, Burkhardt & Harris, and Roberts & Montgomery, all of Philadelphia, Pa., for appellants.

Arthur Littleton, of Philadelphia, Pa. (Morgan, Lewis & Bockius, of Philadelphia, Pa., of counsel), for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. The District Court dismissed the plaintiffs' bill praying that the defendant bank pay to them, as trustees in bankruptcy of the maker of several promissory notes, the market value of the pledged collateral which the defendant bank, holder of the notes, had sold and, as they claimed, had unlawfully converted. The plaintiffs appealed.

The defendant bank, which we shall call the "city bank," is a national banking institution organized as a result of a merger between several banks with its banking house in the City of Philadelphia. Frank C. McCown, a stock and bond broker, individually and trading as McCown & Company, borrowed from time to time on notes accompanied with collateral substantial sums of money from the constituents of the city bank before the merger and thereafter from that bank itself aggregating, at the time in question, nearly $500,000. We shall for convenience treat the transactions as though they had been with the city bank alone.

As a metropolitan bank, the defendant had numerous correspondent banks in the suburban districts and in the country beyond to which we shall refer as the "country banks." These banks kept balances with the city bank which, when requested, it invested in notes it considered good and frequently in notes it had itself taken. The practice was somewhat as follows:

A country bank desiring to have, say, $10,000 of its balance put out on a loan would telephone the city bank to that effect. Thereupon the city bank would, by book-keeping entries, withdraw $10,000 from the country bank's balance and put it in one of its loans, notifying the debtor that it had done so, and also notifying the country bank, giving the name of the debtor and a list of the collateral accompanying the note. The note of the debtor would not be endorsed to the country bank but would remain as originally drawn in the city bank's possession. The debtor's note with the collateral attached would, however, be segregated and set apart in an envelope with the name of the country bank upon it and proper notation made on the books of the city bank that the note and collateral had been so appropriated to the country bank's account, and, though remaining with the city bank, the note and its col-

lateral would thereafter be regarded the property of the country bank. The portion of the McCown loans with the city bank which is involved in this case was represented by five negotiable notes for $20,000, $25,000, $40,000, $50,000 and $50,000, respectively, allocated to and held in that way by several country banks.

In January, 1927, McCown became insolvent and made an assignment for the benefit of his creditors. Learning of his insolvency and assignment, the defendant city bank at once got in touch with the various country banks and suggested that they authorize it to take them out of the loans, which authority the country banks promptly gave. Thereupon the city bank, through a reverse formula of bookkeeping entries and notice to parties interested, took back these five notes with their collateral and held them as its own. Thereafter the city bank, having thus reacquired the notes and believing them restored to their original condition, that is, evidencing loans which it had made to McCown, treated them as such and, after due notice and strictly pursuant to authority contained in the notes themselves, sold as much of the collateral as was necessary to pay the five notes so reacquired and also the remainder of its other loans to McCown for which the individual collateral was not sufficient, and turned over the balance of collateral and cash with a statement of account to the then representatives of McCown. Subsequently bankruptcy ensued, and McCown's trustees, by this action, complained of the conduct of the city bank and prayed for a decree requiring it to pay to them the market value of all securities which it had so converted to its own use.

■ Preliminary to a discussion of the questions involved it may be well to view the legal status of the several parties in this situation. The relation between McCown and the city bank with reference to the five collateral notes was originally that of debtor and creditor, and also pledgor and pledgee. These relations also existed between them as to other notes given by McCown to, and at that time held by, the city bank. Long before his insolvency and bankruptcy, McCown had by the five notes in question made contracts with the city bank and its transferees in respect to the disposition of the collateral which were definitely expressed in their terms. Although one of the notes differed from the other four in that in this one the power to dispose of the collateral and apply the proceeds to any other of the maker's liabilities was given "the holder" and in the others it was given "the said bank" (yet in the latter there was an ex-

pression which gave the transferees of the said bank, and their transferees, all the powers and rights which were originally given the bank), we agree with the learned trial judge that the city bank was at the time in question holder or transferee of all the notes with the original powers and rights restored to it on reacquiring them.

. The plaintiffs do not, and indeed cannot, deny that if McCown had not become insolvent the city bank could have reacquired the notes from the country banks and would thereupon have become possessed of all the rights which the country banks theretofore had in them and in the collateral securing them. Short of paying off the notes in full McCown could do nothing to prevent the city bank from acquiring such rights along with the notes or from exercising those rights as holder or transferee, and it is equally true that after the city bank had reacquired them McCown could not tender payment to the country banks and get back the collateral. The reason for this is obvious. McCown's notes were negotiable. He thus had set them adrift on the commercial sea and he was bound by their terms into whatever port they might go. They charted no course and contained no limitations of movement or use and (unless frustrated by his insolvency) the city bank could hold them, sell them, and, having sold them, could reacquire them, and on default sell the collateral and apply the proceeds to payment of the five notes and any excess to payment of other notes whose collateral was insufficient. Oleon v. Rosenbloom & Co., 247 Pa. 250, 93 A. 473, L. R. A. 1915F, 968, Ann. Cas. 1916B, 233.

■ This brings us to the fact of McCown's assignment for the benefit of creditors and to the question of its effect upon the transactions. We shall assume several things and regard them as facts for the purpose of this discussion; namely, that McCown, while solvent, gave the city bank five perfectly valid negotiable notes with power to the holder to sell the collateral and apply the proceeds to these and all other notes of the maker similarly held; that later McCown became insolvent and made an assignment for the benefit of his creditors; that before his insolvency and assignment the city bank had actually and completely transferred the five notes to country banks; that after his insolvency and assignment the city bank reacquired the notes from the country banks without any rights lingering in those banks; that before the city bank so reacquired them it had full knowledge of McCown's insolvency and assignment; and, finally, that bankruptcy of

McCown ensued more than four months after the notes were originally acquired but within four months of the time they were reacquired and the collateral sold.

The plaintiffs first contend that the rights of the city bank and all other creditors of McCown became fixed the instant he executed the deed of assignment by force of the Pennsylvania Act of June 4, 1901, P. L. 404, relating to assignments by insolvent debtors for the benefit of creditors, and that, in consequence, the subsequent sale of the collateral of these notes by the city bank and its application of the proceeds to other notes of the same maker constituted an unlawful conversion, or, if the court should not agree to this, then the assignment was one at common law and the sale and diversion of the proceeds was equally unlawful. This raises the question whether the state insolvency act applied or was suspended or superseded by the National Bankruptcy Act (11 USCA). The plaintiffs contend that it was not superseded, citing the decision of this court in First Nat. Bank v. Weaver, 296 F. 112. That case dealt with the insolvency of a farmer against whom, under the National Bankruptcy Act, an involuntary petition in bankruptcy can not be filed. He became amenable however to the state insolvency law on a charge of making a preference while insolvent. More than four months having elapsed, he filed a voluntary petition in bankruptcy hoping thereby to avail himself of the time limitation and also to avoid the operation of the state insolvency law already set afoot. This court decided in that case, not that the National Bankruptcy Act abolished or annulled state insolvency acts, but that it superseded them when they were in conflict with it; otherwise state insolvency acts when in aid of the National Bankruptcy Act stand, and that under the facts of that case the bankruptcy court, when it superseded the state court, could avail itself of the action of the latter court in avoiding a palpable preference by the bankrupt. McCown, being a broker, not a farmer, was subject to the National Bankruptcy Act. The national act, we think, suspended or superseded the state act in respect to the particular thing which the plaintiffs charge the city bank with doing unlawfully (Potts v. Smith Mfg. Co., 25 Pa. Super. Ct. 206; Hoover y. Ober, 42 Pa. Super. Ct. 308; and Peckhan's Assigned Estate, 35 Pa. Super. Ct. 330), namely, effecting a preference against McCown's other creditors; but that is not really important for there is nothing in the Pennsylvania Insolvency Act (June 4, 1901, P. L. 404 [Pa. St. 1920, § 710 et seq.]) or in the National Bankruptcy Act that makes void or voidable as a preference the transaction which evolved from the original acquisition of the notes with collateral more than four months before McCown's insolvency and bankruptcy, or that makes void or voidable their reacquisition and sale of their collateral after his insolvency and within four months of his bankruptcy. The thing which the city bank did was to sell collateral and apply the proceeds pursuant to the terms of running notes. To constitute a preference under either act the offending thing must be done by the insolvent or bankrupt himself, not by a creditor, and it must be done when he is insolvent. All that McCown did was to give notes while solvent, which was more than four months before insolvency or bankruptcy. Thereafter what the city bank, holder of the notes, did was pursuant to authority thus seasonably and lawfully given it.

Holding that the Pennsylvania Insolvency Law of 1901 did not apply to the acts here complained of, we are not inclined to hold the acts unlawful because made so by an assignment at common law. Without discussing the effect of the National Bankruptcy Act on such an assignment we hold that the voluntary assignment here in question was not of that character. McCown's creditors never accepted it and his assignee had no rights higher than his own. Transfers from one creditor to another of notes given by the maker while solvent and four months before an assignment for creditors or before bankruptcy are not preferences within the meaning of either law. Potter v. Gilbert, 177 Pa. 159, 167, 168, 35 A. 597, 35 L. R. A. 580.

When the learned trial court was about to direct dismissal of the bill on substantially this line of reasoning, the plaintiffs, by leave, amended their bill by adding the following paragraph:

"Upon the known insolvency of McCown on January 25, 1927, and the assignment for the benefit of creditors made on that date, all the assets of the said McCown, including the equity in the respective notes held by each of said correspondent banks, became a trust fund for the benefit of all the creditors of said McCown. The defendant bank in subsequently reacquiring said notes from these correspondent banks took subject to the prior equities of all the creditors of McCown."

Although the debtor's insolvency and assignment for the benefit of creditors are joined in the averment of this new paragraph, the amendment raised what turned out to be the main question in the case where-

in McCown's insolvency was distinguished from his assignment as a fact affecting the rights of the city bank—and it was so separately argued and considered—yet the question, as the plaintiffs here frame it on the amendment and embody it in a proposition of law, is: "That the fact of insolvency, plus the deed of assignment, puts all of the creditors of the insolvent on an equal footing, so that their rights are fixed at that instant and cannot be either enlarged or diminished by anything thereafter occurring."

■ Having disposed of the question of assignment, this new question as we prefer to state it is, whether McCown's insolvency, the instant it was established and made known by his assignment, froze the rights of all his creditors, including those of banks holding his notes, by analogy to the fixation of all rights and liabilities of a corporation and its creditors on the appointment of a receiver, and thereafter all his assets, including the equity in pledged collateral, became a trust fund for creditors.

In support of its new position the plaintiffs cite McDonald, Receiver, v. Williams, 174 U. S. 397, 19 S. Ct. 743, 43 L. Ed. 1022, and quote from the opinion: "When a corporation becomes insolvent, it is so far civilly dead that its property may be administered as a trust fund for the benefit of its stockholders and creditors."

At first view this statement would seem to support the plaintiffs' proposition of law, but in that case the receiver of a national bank sued to recover a dividend paid to a stockholder when the bank was insolvent in violation of Section 5204, Rev. St. (12 USCA § 56). The act of the bank which offended the statute occurred of course before the appointment of a receiver. In the course of its opinion the court, taking the above expression from Graham v. Railroad Co., 102 U. S. 148, 161, 26 L. Ed. 106, completed the quotation as follows: "A court of equity, at the instance of the proper parties, *will then make* those funds trust funds, which, in other circumstances, are as much the absolute property of the corporation, as any man's property is his," meaning, evidently, that on a bill in equity for a receiver or for some other purpose a court of equity will then make the corporation's funds trust funds for the benefit of creditors, not that the corporation's funds become trust funds upon the instant of its insolvency whenever that should occur.

Further adverting to the character of the trust and quoting from Hollins v. Brierfield Coal & Iron Co., 150 U. S. 371, 383, 385, 14 S. Ct. 127, 130 (37 L. Ed. 1113), the court in McDonald, Receiver, v. Williams, said: "It is rather a trust in the administration of the assets *after possession by a court of equity* than a trust attaching to the property, as such, for the direct benefit of either creditor or stockholder."

In the McDonald, Receiver, v. Williams Case, the question of the bank's insolvency and the consequent fixation of the rights of creditors did not turn upon the action of a court of equity in appointing a receiver because that suit was under a statute which made payment of a dividend by a national bank when insolvent unlawful. There, of course, the fact of insolvency and the time of insolvency might effectively occur, as they normally would, before receivership, and, when so occurring, the statute makes payment of a dividend invalid.

There is no question that in Pennsylvania the rights of creditors of an insolvent corporation are fixed as of the date of the appointment of a receiver, United States Brick Co. v. Middletown Shale Brick Co., 228 Pa. 81, 77 A. 395; Blum Brothers v. Girard Nat. Bank, 248 Pa. 148, 93 A. 940, Ann. Cas. 1916D, 609; receivership being regarded somewhat in the nature of judicial process by which the rights of creditors are fastened upon the property of the debtor, Hetherington & Sons v. Rudisill (C. C. A.) 28 F.(2d) 713, 717. Nor is there any doubt that in Pennsylvania the rights of such creditors do not become fixed by the fact of insolvency whenever occurring before receivership, even though a creditor may have full knowledge of it, for in the Middletown Shale Brick Co. Case, supra, the court felt itself coerced by the rule to allow a debtor, who had purchased a claim of a corporation with full knowledge that a bill for the appointment of a receiver because of its insolvency was pending, to set it off against a debt which it owed the corporation. See also Jordan v. Sharlock, 84 Pa. 366, 24 Am. Rep. 198. If insolvency of a debtor and a creditor's knowledge of his insolvency do not in such case arrest a creditor's right to cover his debt, it is difficult to see why the fact of insolvency and such knowledge should prevent a holder of a debtor's notes proceeding to recover on them pursuant to their terms and to the extent allowed in Oleon v. Rosenbloom & Co., supra.

Here the debtor, long before insolvency, had issued notes which gave the holder definite rights in that portion of his property which he pledged as collateral. These rights might enlarge or diminish according to the creditor's other holdings of the maker's notes, but having been created by the debtor him-

self long before his insolvency they did not arise from nor were they defeated by his subsequent insolvency or assignment. When McCown pledged his property as collateral to the notes, he gave any holder the right to apply the equity in that property to any other debt of his that such holder might have and in doing so he put that property beyond the reach of his other creditors and, certainly, beyond his own reach and that of his assignee who merely stood in his shoes. Strawn v. Iams, 247 Pa. 132, 93 A. 174; Bullitt v. Church, 26 Pa. 108. We are forced to this line of reasoning because the plaintiffs have not supplied us with any authorities which, directly or by persuasive inference, sustain their position that McCown's insolvency put all his creditors on an equal footing and arrested the exercise of rights granted under his outstanding notes the instant his insolvency occurred and came to the knowledge of his creditors.

The decree is affirmed.